UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Todd Smith-Bunge,                                           Case No. 15-cv-4383 (RHK/LIB)

              Plaintiff,

v.                                                          **MEMORANDUM AND ORDER**

Wisconsin Central, Ltd.,

              Defendant.

---

This matter is before the Court on Defendant's Motions for Summary Judgment, to Sever, and to Exclude Expert Testimony. For the following reasons, the Motion for Summary Judgment is granted in part and denied in part, the Motion to Sever is denied as moot, and the Motion to Exclude is granted.

**BACKGROUND**

Plaintiff Todd Smith-Bunge worked at Defendant Wisconsin Central, Ltd., for six years. He initially worked as a machine operator, but after suffering a back injury on the job, he transitioned to working as a welder. (McNee Aff. Ex. 1 (Smith-Bunge Dep.) at 59.) In the course of his duties as a welder, Smith-Bunge drove a welding truck. (Id. at 72.)

On September 18, 2014, Smith-Bunge, two other Wisconsin Central employees, and employees of another company, Holland, LP, were working on train tracks near Aurora, Minnesota. (Id. at 70-71.) Because of the track work, a train traveling on the track had been stopped just east of where they were working, and Smith-Bunge was

aware of this fact. (Id. at 82.) Smith-Bunge also knew that the railroad had given the train permission to continue moving when the work was completed. (Id.)

After they finished working, the other employees got into their vehicles and Smith-Bunge got into his truck. The three vehicles drove west on the service road parallel to the tracks; they were traveling in the same direction as the now-moving train. The service road crossed the tracks and continued to run west, parallel to and on the other side of the tracks. (Id. at 94-96.) The other two vehicles crossed the tracks ahead of the train without incident; Smith-Bunge drove into the path of the oncoming train and was injured. He admits that he saw and heard the train as he was driving (id. at 98-99), but claims that the truck brakes either malfunctioned, some obstacle prevented him from braking, or the taconite pellets on the roadway prevented his truck from stopping in time to avoid an accident.

The railroad investigated the incident, but at the union's request waited until Smith-Bunge was cleared to return to work some five months later to hold a hearing. (McNee Decl. Ex. 9 (Swalboski Dep.) Ex. 2.) The railroad's expert witness, who examined the truck and reconstructed the accident, testified that although one of the truck's six brake axles was out of adjustment, the rest of the brakes were in good working order and were sufficient to stop the truck. (Id. Ex. 1 (Hr'g Tr.) at 118-19; 122.) Smith-Bunge's expert witness agrees with this conclusion. (McNee Decl. Ex. 6 (Lofgren Dep.) at 70-71.) There was no evidence of any obstacles blocking the brake pedal. (Id. at 88-89.) The data recorder from the truck indicated that, although Smith-Bunge had slowed to about 10 mph at the time of the accident (McNee Decl. Ex. 7 (Rogers Dep.) at 167), he

had not depressed the brake pedal enough to activate the anti-lock brake system. (Id. at 128.) Smith-Bunge did not proffer any witness or expert testimony at the hearing, although he had retained an expert to perform tests on the truck and to examine the service road and crossing, presumably in anticipation of this litigation.

Wisconsin Central determined that Smith-Bunge violated four of the railroad's safety rules, including that he falsely reported that the truck's brakes failed and caused the accident. On March 6, 2015, Wisconsin Central terminated Smith-Bunge's employment. (Garella Aff. Ex. 14.)

Smith-Bunge filed an administrative complaint, claiming that his termination was in retaliation for a previous federal lawsuit and the injuries he suffered in the September 18, 2014, accident. (McNee Aff. Ex. 12.) The record does not reflect the disposition of that complaint. Smith-Bunge filed this lawsuit on December 16, 2015, claiming both retaliation under the Federal Railroad Safety Act ("FRSA") and that the railroad's negligence caused the accident under the Federal Employers' Liability Act ("FELA").

**A.    Summary Judgment**

Summary judgment is proper if there are no disputed issues of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The Court must view the evidence and inferences that may be reasonably drawn from the evidence in the light most favorable to the nonmoving party. Enter. Bank v. Magna Bank, 92 F.3d 743, 747 (8th Cir. 1996). The moving party bears the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). A party opposing a properly

supported motion for summary judgment may not rest on mere allegations or denials, but must set forth specific facts in the record showing that there is a genuine issue for trial. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986).

    1.    **FRSA Claim**

The FRSA prohibits rail carriers from retaliating against employees who engage in safety-related protected activities. 49 U.S.C. § 20109. As relevant here, FRSA provides that a rail carrier "may not discharge . . . or in any other way discriminate against" an employee for, lawfully and in good faith, reporting a hazardous safety condition or workplace injury, testifying at an FRSA proceeding, or following a doctor's treatment plan. Id. §§ 20109(a)(3), (a)(4), (b)(1)(A), and (c)(2).

Wisconsin Central argues first that Smith-Bunge cannot raise here any claims he did not raise in his administrative complaint because of FRSA's exhaustion requirement. 49 U.S.C. § 20109(d). Smith-Bunge mentions that he complained about the condition of the road and the track crossing at some point before the September 2014 accident; Wisconsin Central asserts that he is precluded from making this argument here because it was not included in his administrative complaint. But Smith-Bunge is not contending that he was retaliated against for this purported earlier complaint about the road and crossing. The retaliation he alleges is based on his previous lawsuit and his conduct in reporting the accident itself. There is no exhaustion problem.

To prove unlawful retaliation, the employee must show that (1) he engaged in a protected activity, (2) the rail carrier knew that he engaged in that activity, (3) he suffered an adverse employment action, and (4) the circumstances raise an inference that the

4

protected activity was a "contributing factor" in the adverse employment action. See id. §§ 20109(d)(2)(A)(i), 42121(b)(2)(B)(iii); 29 C.F.R. § 1982.104(e)(2). Even if the employee makes that showing, the rail carrier may avoid liability by furnishing "clear and convincing evidence" that it would have taken the same adverse employment action regardless of any protected activity. 49 U.S.C. § 42121(b)(2)(B)(ii).

Smith-Bunge asserts three alleged protected activities. First is his contention that his firing was in retaliation for his previous lawsuit against the railroad. In that lawsuit, Smith-Bunge challenged a 15-day suspension Wisconsin Central imposed on him for his alleged untimely reporting of a previous workplace injury. Smith-Bunge v. Wisconsin Cent., Ltd., 60 F. Supp. 3d 1034 (D. Minn. 2014) (Montgomery, J.). The judge assigned to that case granted partial summary judgment to Smith-Bunge, finding that the suspension violated Smith-Bunge's rights under FRSA. Id. at 1042. According to Smith-Bunge, that decision marked the first time that any railroad has been found judicially liable for a violation of FRSA. The previous case was ongoing when the accident at issue here occurred, and the summary-judgment order issued several weeks after the accident. Smith-Bunge also claims that other employees who have collided with trains were not fired, noting that two employees whose vehicle was hit by a train were subject only to six-day suspensions. He contends that Wisconsin Central's treatment of these other employees evidences its retaliatory intent with respect to Smith-Bunge.

Although Smith-Bunge's prior lawsuit constitutes protected activity, he cannot establish either the requisite knowledge on the part of the relevant decisionmakers or a causal connection between his protected activity and his termination. There is no

5

evidence that Smith Bunge's supervisor at the time of the accident or his supervisor's supervisor were even aware of his previous lawsuit. Smith-Bunge argues that Wisconsin Central itself knew about the prior lawsuit, but this is not enough. He must establish that the individuals who decided to terminate his employment knew about the previous lawsuit. See Kuduk v. BNSF Ry. Co., 768 F.3d 786, 791 (8th Cir. 2014) (FRSA retaliation requires evidence that the relevant decisionmakers knew about the protected conduct). Smith-Bunge has no evidence that the decisionmakers in his case knew about the previous lawsuit, and absent such evidence, his retaliation claim fails. In addition, the other accidents to which Smith-Bunge points for comparison were not similar to his accident in the least. He cannot rely on Wisconsin Central's response to these accidents to support his claim of retaliation here.

Even if the railroad's knowledge of Smith-Bunge's protected activity were somehow enough to support an inference of retaliation, Smith-Bunge cannot show that there is any causal connection between his protected activity and his termination. The only causation he alleges is temporal proximity, but this, by itself, cannot establish causation. Kiel v. Select Artificials, Inc., 169 F.3d 1131, 1136 (8th Cir. 1999) (en banc). And the major accident in which he was involved is a break in whatever causal chain may have existed. See Freeman v. Ace Tel. Ass'n, 467 F.3d 695, 698 (8th Cir. 2006) ("[T]he presence of intervening events undermines any causal inference that a reasonable person might otherwise have drawn from temporal proximity."). The relevant protected conduct for purposes of the retaliation claim is Smith-Bunge's filing the previous lawsuit, not the summary-judgment opinion in that lawsuit. Smith-Bunge filed the lawsuit in 2013, long

before the accident here and long before his termination. Thus, there is no temporal proximity in any event.

Smith-Bunge also claims that he was retaliated against for filing an accident report and injury report after the September 2014 accident. He contends that Wisconsin Central retaliated against him for reporting the allegedly hazardous condition either of the truck or the roadway (although he mentioned only the brakes issue) in his accident report, and for reporting the injury he suffered in the accident. But these reports do not constitute protected activity in this case. It is self-evident that after an accident in which he collided with a train and was airlifted from the scene to a hospital, Smith-Bunge was required to file an accident and injury report. It is similarly self-evident that, in those reports, he was required to give his account of why the accident occurred. There is simply no causal connection between his filing reports regarding the accident and his termination; the only causal connection is between the accident itself and his termination. Moreover, Smith-Bunge has no evidence whatsoever to support his theory that Wisconsin Central retaliated against him for reporting that his truck's brakes were faulty or that the road was covered in taconite pellets. Smith-Bunge's FRSA claim fails as a matter of law and is dismissed.

2. **FELA Claim**

The FELA creates a federal remedy for railroad employees injured because of their employer's negligence. 45 U.S.C. § 51. Smith-Bunge points to two bases for imputing negligence to Wisconsin Central here.

First, Smith-Bunge contends that the railroad was negligent in allowing taconite pellets to accumulate on the service road. He contends that the presence of taconite

7

pellets caused his truck to unexpectedly lose friction with the road and to slide toward the tracks. He argues that the railroad was aware of this alleged hazard but did nothing to remediate it.

Smith-Bunge also argues that the design of the crossing was negligent. The crossing is not perpendicular to the tracks, but crosses them at an acute angle and up a grade. (Garella Decl. (Docket No. 124) Ex. 6 at 4.) Smith-Bunge asserts that the crossing's design obscures the tracks from the driver of any vehicle using that crossing, and further that Wisconsin Central was aware of the dangerousness of this particular crossing.

The relevant inquiry in FELA cases is "whether the negligence of the employer played any part, however small, in the injury or death which is the subject of the suit." Rogers v. Missouri Pac. R.R., 352 U.S. 500, 507-08 (1956). "The burden of the employee is met, and the obligation of the employer to pay damages arises, when there is proof, even though entirely circumstantial, from which the jury may with reason make that inference." Id.

This is not a difficult standard for an employee to meet. Smith-Bunge has presented testimony regarding the effect of taconite pellets on a vehicle's ability to stop, as well testimony that the design of the crossing contributed to the accident. Whether a jury would ultimately determine that any of these factors played a part in this accident is a close question, but viewing the evidence in the light most favorable to Smith-Bunge, there is enough evidence to submit the FELA claim to a jury for consideration. The Motion is therefore denied as to the FELA claim.

### B. Motion to Sever

Wisconsin Central seeks separate trials on Smith-Bunge's FRSA and FELA claims should the Court deny summary judgment on either claim. Because the Court concludes that the FRSA claim is without merit, the request for separate trials is moot.

### C. Daubert Motion

Wisconsin Central seeks to bar Smith-Bunge's expert witness, Daniel Lofgren, from testifying that the track crossing was "inherently dangerous." Lofgren is an accident reconstructionist; Wisconsin Central does not take issue with his qualifications in general or with the other opinions he offers. Wisconsin Central contends only that Lofgren is not qualified to offer an opinion on the track crossing because he is not a civil engineer, nor has he used the crossing.

The Supreme Court has assigned district courts the role of "gatekeeper" to ensure that only relevant and reliable expert testimony is admitted under Fed. R. Evid. 702. Daubert v. Merrell Dow Pharm., Inc., 509 U.S. 579, 589 (1993). To determine reliability, the Court should examine (1) whether the theory or technique can be and has been tested, (2) whether it has been subjected to peer review and publication, (3) the known rate of potential error, and (4) whether the theory or technique has been generally accepted. Id. at 592-95.

Wisconsin Central questioned Lofgren about his qualifications to offer his opinion on the dangerousness of the crossing. He admitted that a civil engineer would be qualified to offer such an opinion, and that he had never before opined regarding the safety or lack thereof of any intersection or track crossing. Smith-Bunge contends that

because Lofgren answered questions about the crossing's dangerousness at his deposition, he should be allowed to do so at trial. But Wisconsin Central objected to Lofgren's qualifications to answer those questions at his deposition, and the mere fact that an expert witness offers an opinion does not mean that he is qualified to do so.

One of Smith-Bunge's claims here is that the angle of the crossing made it impossible for him to see the train until it was too late for him to avoid the collision. Lofgren may testify to how the crossing may have contributed to the accident. But he may not testify that the angle of the crossing was "inherently dangerous." That opinion is beyond the scope of his qualifications. There are many witnesses who can testify about this crossing—Smith-Bunge himself testified he had driven across that crossing many times. These witnesses are more qualified to offer an opinion about the crossing's dangerousness than is Lofgren. The Motion to Exclude is therefore granted.

**CONCLUSION**

Smith-Bunge's FRSA claim fails as a matter of law, but there are issues of fact as to his FELA claim. His expert is not qualified to opine about the inherent dangerousness of the railroad crossing. Accordingly, **IT IS HEREBY ORDERED that**:

1. The Motion for Summary Judgment (Docket No. 64) is **GRANTED in part** and **DENIED in part**;
2. The Motion to Sever (Docket No. 60) is **DENIED as moot**; and
3. The Motion to Exclude (Docket No. 56) is **GRANTED**.

Dated: August 31, 2017            *s/ Paul A. Magnuson*
                                  Paul A. Magnuson
                                  United States District Court Judge